**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD R. SALTER,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:24-0332** |
| **v.** | : | **(JUDGE MANNION)** |
| **MARK WAHL, *et al*.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Plaintiff Edward R. Salter is a serial *pro se* litigant currently incarcerated at the State Correctional Institution at Waymart (SCI-Waymart), located in Waymart, Pennsylvania. (Doc. 1). He filed the instant civil rights action, pursuant to 42 U.S.C. §1983,[1] claiming that SCI-Waymart officials conspired to terminate him from his position as an inmate porter due to his race and litigious activities, in violation of his First and Fourteenth Amendment rights. Presently pending before the Court is Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. (Doc. 21). Because Salter has not responded to Defendants' Rule 56 motion,

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

after being granted a time extension,[2] the Court will grant Defendants'

unopposed motion for summary judgment.[3]

## I. BACKGROUND

On February 27, 2024, Plaintiff, Edward R. Salter, an inmate confined

at SCI-Waymart filed the above caption civil rights action, pursuant to 42

U.S.C. §1983. (Doc. 1). In his complaint, he alleged that the following SCI-

Waymart employees, Superintendent Mark Wahl, Unit Manager Michael

Skutack, Correction Officer Halipen and Correction Officer Giaordano,

entered into a conspiracy to discriminate against him on the basis of his race.

(*Id.*, ¶¶5-8). Plaintiff argued that he was not hired as an Inmate Porter

because of his race and in retaliation for filing grievances and lawsuits

---

[2] Plaintiff filed a motion to compel service of Defendants' filings—and a motion to strike Defendants' motion for summary judgment—asserting that he was not properly served or in receipt of those documents (Docs. 28, 32). While Plaintiff did not formally acknowledge receipt, the fact that he drafted and filed motions based on those specific filings listed in the docket demonstrates that he was indeed in possession of them. The Court dismissed Plaintiff's motions, finding that service had been properly effected and that Plaintiff, by virtue of relying on those filings, was clearly aware of them. The Court also construed Plaintiff's filings as a request for an extension of time, which it granted (Doc. 35).

[3] Despite being granted an extension of time, Defendant failed to file an opposition to the motion for summary judgment or to respond to the accompanying statement of facts. Instead, Defendant has engaged in dilatory conduct by submitting frivolous motions, which the Court will no longer entertain. Accordingly, the Court will treat Defendants' motion for summary judgment as unopposed and deem the accompanying statement of facts admitted.

against various prison officials at SCI-Waymart. (*Id.*) Furthermore, Plaintiff alleged that such discrimination and retaliation violated his First and Fourteenth Amendment rights. (*Id.*)

From March 22, 2022 until May 18, 2022, Plaintiff worked as an Inmate Porter as part of the Medical Service Staff at SCI-Waymart. (Doc. 22, ¶9). On that last day, Plaintiff was terminated from his assignment due to his attitude, and refusal to follow directions. (*Id.*, ¶10). A short time thereafter, on May 27, 2022, Defendant Skutack informed the Inmate Employment Officer via an email exchange that the Plaintiff was removed from the assignment. (*Id.*, ¶11). A unit management support team action form provided the following details regarding the removal:

> Inmate Salter was removed from his position as a K2 block Live-In Porter on 5/18/22. Inmate Salter was observed earlier that day getting upset with another inmate and yelling at them because inmate Salter said "he sneezed on my shower shoe and didn't tell me and I was gonna put it on." Officer Giordano and Officer Hal[i]pen intervened and inmate Salter continued his frustration toward the officers as well as the other inmate and ignored their instruction and continued to argue and attempt to make a case for his reacting in an agitated manner.

(*Id.*, ¶12; *see also* Doc. 23-4). Plaintiff had a history of the above-described type of behavior while working as an Inmate Porter. (*Id.*, ¶13). For example,

Case 3:24-cv-00332-MEM-LT    Document 41    Filed 08/11/25    Page 4 of 23

"[Plaintiff], in previous instances, has been observed yelling at inmates who soiled the bathroom floor after he had cleaned it. He also continued to 'close' the bathroom and do a 'deep clean' of the bathroom despite being instructed by staff not to 'close' the bathroom for an extended period of time as inmates on the block need to use the bathroom and not always are the other inmates able to wait until he completed this task." (Doc. 23-4, at 2). It was reported that the Plaintiff "ha[d] difficulty in accepting the officer's instruction and often insist[ed] on completing tasks 'his own way' without adhering to the direction given by the block officers and staff." (*Id.*)

Despite documented issues with his refusal to follow instructions, poor temperament, and unprofessional conduct—which led to his removal from the inmate porter position—Plaintiff alleges that his termination was actually motivated by racial discrimination[4] and retaliation for filing grievances and lawsuits against prison officials. (Doc. 1, at 16-18). Plaintiff claims that Defendant Skutack told him that he would be "officially blackballed from ever working as [an] Inmate Porter at SCI Waymart[.]" (*Id.*, at 18). Furthermore, Plaintiff asserts that Superintendent Defendant Wahl personally accosted

---

[4] Although Plaintiff contends that he was not rehired as a porter due to his race, he simultaneously acknowledges that an African American individual was hired for that position—highlighting a fundamental inconsistency in his allegations. (Doc. 12, at 18).

him and stated that, "myself, Mr. Skutack, C.O. Halipen, C.O. Giordano, w[ere] wrong for using Invidious Discrimination, Conspiracy, Retaliation, against you for not hiring you as a Inmate Porter, however, I must support them, and stand by my actions and their actions as well." (*Id.*, at 17). Although Plaintiff's allegations might be striking, they are unsupported by any evidence beyond mere recitals in his complaint and contradicted by the record evidence.

On July 17, 2023, over a year after his employment was terminated, Plaintiff filed grievance 1042843 regarding the above incidents against the moving Defendants. (Doc. 22, ¶¶14-15). The grievance was denied by Lieutenant Grecco, and later appealed to the facility manager. (*Id.*, ¶¶16-17). On August 18, 2023, Defendant Wahl responded to the appeal and upheld the initial response grievance as denied. (*Id.*, ¶18). Three days later, Plaintiff appealed the grievance for final review. (*Id.*, ¶19). On October 16, 2023, the grievance was dismissed because the initial grievance was illegible. (*Id.*, ¶20).

Since 2011, Plaintiff has filed four lawsuits against various DOC employees. (Doc. 22, ¶21). Moving Defendants Wahl, Skutack, Giordano, and Halipen were only named as defendants in this present litigation. (*Id.*, ¶22). The remaining lawsuits named different DOC employees. (*Id.*)

- 5 -

Plaintiff filed his complaint on February 27, 2024. (Doc. 1). In response, Defendants filed an answer on May 24, 2024, (Doc. 14), to which Plaintiff responded. (Doc. 16). On February 28, 2025, Defendants filed the instant motion for summary judgment, (Doc. 21), along with a statement of material facts (Doc. 22) and a supporting brief (Doc. 23). Rather than respond, Plaintiff filed a motion to compel service and a motion to strike the summary judgment motion, claiming he had not been properly served or received the relevant documents (Docs. 28, 32). Although Plaintiff did not formally acknowledge receipt, his motions referenced and relied on the very filings at issue, which were publicly available on the docket—indicating he had access to and possession of them. The Court denied Plaintiff's motions, finding that service was properly effected and that Plaintiff was clearly aware of the filings. The Court further construed Plaintiff's filings as a request for an extension of time, which was granted, extending the response deadline to June 5, 2025, and directed Defendants to re-serve Plaintiff with the materials. (Doc. 35).

Despite this extension, Plaintiff again failed to file an opposition to the motion for summary judgment or to respond to the statement of material facts. Instead, he filed a motion for sanctions against Defendants (Doc. 36), once more alleging that he had not been served. However, Defendants

- 6 -

submitted evidence confirming proper service on both occasions (Docs. 21 at 3, 22 at 6, 23 at 21, and 40-1), and the Court had already determined that Plaintiff was aware of the materials forming the basis of his repeated claims, which were publicly available. Accordingly, the Court will construe Defendants' motion for summary judgment as unopposed and deem the accompanying statement of material facts admitted. The motion for summary judgment is now ripe for review.

## II. STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014). This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986). A

"scintilla of evidence" supporting the nonmovant's position is insufficient;

"there must be evidence on which the jury could reasonably find for the

[nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015)

(quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original). Succinctly

stated, summary judgment is "put up or shut up time" for the nonmoving

party. *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting

*Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

## III. Discussion

Defendants contend that Plaintiff is unable to satisfy his Rule 56

burden because he cannot adduce any competent evidence to establish a

genuine issue of material fact as to his Section 1983 claims. The Court

agrees and finds that Plaintiff has failed to carry his Rule 56 burden, so

judgment must be entered in favor of Defendants.

### A. Failure to Oppose a Rule 56 Motion

First, Plaintiff has failed to carry his burden at summary judgment

because he has not opposed Defendants' Rule 56 motion in any way.

Plaintiff has not identified any record evidence that would rebut Defendants'

contention (and supporting evidence) that they terminated him from the

position as inmate porter due to his refusal to follow instructions, poor

temperament, and unprofessional conduct—and not on the basis of race or in retaliation for his filed lawsuits. Plaintiff has not, for example, pointed to a declaration or affidavit, witness statements, documentary support, or any other evidence that could sustain a verdict in his favor. In fact, Plaintiff has not even responded to Defendants' Rule 56 motion, meaning that—pursuant to Local Rule 7.6—the motion is deemed unopposed.[5]

At summary judgment, "the non-moving party *must oppose the motion* and, in doing so, may not rest upon the mere allegations or denials of his pleadings but, instead, must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (emphasis added) (alteration omitted) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014)). Moreover, "[t]he court need consider only the cited materials" when ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c)(3). No materials have been provided or cited to by Plaintiff in opposition to Defendants' Rule 56 motion. Thus, because Plaintiff has failed to establish that there is a genuine dispute

---

[5] *See* Local Rule of Court 7.6 (stating that failure to file a brief in opposition to a motion, including one for summary judgment, results in said motion being deemed "unopposed").

of material fact for trial, the Court must grant Defendants' unopposed motion for summary judgment.

### B. Merits of Claims

Second, summary judgment must be granted in Defendants' favor because, upon consideration of the Rule 56 record, there is no evidence that would sustain a verdict in his favor on his Section 1983 claims.

### 1. Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Two independent legal theories exist upon which a plaintiff may predicate an equal protection claim: the traditional theory and the class-of-one theory. Here, it appears Plaintiff has pursued both theories at once and failed to succeed on either.

Under the traditional theory, to state a cognizable equal protection claim, a plaintiff "must allege that he is a member of a protected class, similarly situated to members of an unprotected class, and treated differently from the unprotected class." *Pollack v. City of Phila.*, 2007 WL 576264, at *4 (E.D. Pa. Feb. 16, 2007). The differential treatment must have been

- 10 -

intentional. *See, e.g., McClesky v. Kemp*, 481 U.S. 279, 292 (1987) ("[A plaintiff] who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination."). Claims of racial discrimination by prisoners fall under the equal protection clause. *Bacon v. Minner*, 229 Fed. Appx. 96 (3d Cir. 2007) (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987)). Race is a suspect class, including in prisons, and strict scrutiny is applied such that any racial classifications must be narrowly tailored measures that further compelling government interests. *Johnson v. California*, 543 U.S. 499, 505 (2005). Thus, a plaintiff need only show that the differential treatment was "not precisely tailored to serve a compelling governmental interest." *Id.*

Under a class of one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if the plaintiff shows that the defendants engaged in irrational and intentional differential treatment of him when compared with similarly situated individuals. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This theory allows a plaintiff to assert an equal protection claim regardless of protected class when the government irrationally treats the plaintiff differently from similarly situated individuals. *Id.* at 564; *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). To prevail on a class-of-one claim, the plaintiff must

demonstrate that: (1) the defendants treated him differently from others similarly situated; (2) the defendants did so intentionally; and, (3) there was no rational basis for the difference in treatment. *Hill*, 455 F.3d at 239.

"Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). But "'similarly situated' does not mean 'identically situated.'" *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020) (quoting *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 178 (3d Cir. 1991), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–16 (1993)). "[C]ourts conducting the 'similarly situated' inquiry 'should not demand exact correlation, but should instead seek relevant similarity.'" *Id.* (quoting *Stimmel v. Sessions*, 879 F.3d 198, 212 (6th Cir. 2018) (citation omitted)). Determination of whether individuals are similarly situated is a "'case-by-case fact-intensive inquiry.'" *McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 648 (M.D. Pa. 2014) (quoting *Suber v. Guinta*, 902 F. Supp. 2d 591, 607 (E.D. Pa. 2012)).

Plaintiff's Equal Protection claim broadly alleges that all Defendants intentionally treated him differently due to racial animus and without any rational basis. Specifically, he asserts that the Defendants terminated him

- 12 -

from his inmate porter position because he is African American. However, Plaintiff offers no evidence that similarly situated inmates of other races— those who also failed to follow orders, displayed poor temperaments, or talked back to Department of Corrections staff—were retained in their porter positions. There is no indication that Defendants treated Plaintiff differently, let alone on the basis of race. Rather, the record reflects that Plaintiff was removed from the position due to his inability to meet the behavioral expectations of the role. Moreover, Plaintiff fails to show that he was treated differently from others similarly situated, which is fatal to his "class of one" Equal Protection claim. Accordingly, summary judgment will be granted in favor of the Defendants on this claim.

## 2. Fourteenth Amendment Conspiracy Claim

Plaintiff's complaint is riddled with allegations of a conspiracy; alleging that "Defendant Skutack admitted to Plaintiff that himself, Defendants Wahl, Halipen, Giordano, conspired and used Invidious Discrimination against Plaintiff." (Doc. 1, at 34). As astounding as this claim may be, it remains entirely unsubstantiated by the record evidence, and, standing alone, is insufficient to support a civil conspiracy claim.

To state a claim for civil conspiracy under Section 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action and

- 13 -

(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009). To prove the existence of a conspiracy, plaintiff must plead that there was "an agreement, understanding, or 'meeting of the minds' to violate the plaintiff's rights." *Id.* (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008)); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 645 (E.D. Pa. 2014), *aff'd*, 572 F. App'x 68 (3d Cir. 2014) ("A conspiracy is not parallel conduct by different parties; it must embody, at its heart, 'an agreement between the defendants and state officials[.]'"). A civil rights conspiracy also requires "a predicate federal violation" to "anchor" the claim. *Dondero v. Lower Milford Twp.*, 431 F. Supp. 3d 590, 606 (E.D. Pa. 2019), *aff'd*, 5 F.4th 355 (3d Cir. 2021); *see also Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under §1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege.").

Here, Plaintiff points to no facts indicating any agreement among the Defendants, the roles each played, or any overt act in furtherance of a conspiracy. Furthermore, Plaintiff has failed to produce any evidence demonstrating that the Defendants acted in concert to commit any unlawful act. As previously discussed, Plaintiff was removed from his porter position

due to his temperament and not his race—making his removal lawful and foreseeable. All in all, the allegation remains a naked assertion—legal conclusion masquerading as fact—and thus fails as a matter of law. Accordingly, summary judgment will be granted in favor of the Defendants on this claim.

### 3. First Amendment Retaliation Claim

Plaintiff alleges that Defendants retaliated against him for filing grievances and lawsuits when they removed him from his porter position. However, such a claim does not withstand scrutiny under the record evidence and fails to survive summary judgment.

To state a prima facie case of retaliation in violation of the First Amendment, a plaintiff must establish the following elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). To amount to retaliation, the conduct must be adverse and "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."

*McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quotation marks and citation omitted). The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

"Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is 'protected' or an action is 'adverse' will depend on context...." *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). The fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates. *See Pell v. Procunier*, 417 U.S. 817, 822-23 (1974). Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* at 822.

Here, Defendants concede that Plaintiff engaged in constitutionally protected speech when he filed various lawsuits and grievances against

DOC employees. *See Jackson v. Knapp, et al.*, Civ. No. 3:22-0138, Doc. 39,
at *37 (M.D. Pa. Oct. 30, 2024) (the filing of grievances has been viewed by
certain courts as a protected activity under the First Amendment). However,
as Defendants correctly argue, Plaintiff has failed to establish a causal link
between the filing of those lawsuits and grievances, and his loss of
employment. Plaintiff was terminated from his porter position in May of 2022,
at least three years after his last filed lawsuit in 2019. Moreover, none of the
Defendants were even named in Plaintiff's prior lawsuit—further fracturing
any causal link between the two events. *See Ambrose v. Twp. Of Robinson,
Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) ("for protected conduct to be a
substantial or motivating factor in a decision, the decisionmakers must be
aware of the protected conduct."). The only relevant grievance against the
Defendants found pertained to the matter at hand and was lodged 14 months
after Plaintiff was terminated from his porter position.

Defendants further argue that the same decision to terminate Plaintiff
from the inmate porter position would have been made because the prison
has a penological interest in ensuring that inmate porters have the correct
temperament for the position. The Court agrees. As noted earlier, valid
penological objectives of deterrence of crime, rehabilitation of prisoners, and
institutional security justify limitations on the exercise of constitutional rights

by inmates. *See Pell*, 417 U.S. at 822-23. If an inmate demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons related to a legitimate penological interest. *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2011); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). Here, Plaintiff would have been removed from his porter position even in the absence of his grievance against Defendants or other DOC employees. The record evidence demonstrates that Plaintiff displayed insubordination, poor temperament and unprofessional conduct during his short stint as a porter. Clearly, the reasons for his termination related to legitimate penological interests. Accordingly, summary judgment will be granted in favor of the Defendants on this claim.

### 4. Supervisor Liability Claim

Defendants argue that Plaintiff has provided conclusory statements in an attempt to establish supervisor liability against Defendants Wahl and Skutack. The Court agrees.

In general, "a defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Additionally, to the extent that Plaintiff

- 18 -

attempts to hold either Wahl or Skutack liable simply because of their positions as Superintendent and Unit Manager, respectively, he cannot do so because liability under Section 1983 cannot be predicated on *respondeat superior*. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) ("[Plaintiff] cannot predicate liability on her §1983 claims on a *respondeat superior* basis." (citing Rode, 845 F.2d at 1207) (emphasis omitted)); *Robinson v. Delbalso*, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022). Instead, if Plaintiff is seeking to hold either Wahl or Skutack liable for unconstitutional acts by their subordinates, Plaintiff's allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under §1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under §1983 if [they] participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." *See A.M. ex rel. J.M.K. v. Luzerne County Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and

describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom., Taylor v. Barkes*, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff such as Salter must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

*See Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are

- 20 -

insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *Zigler v. Warren*, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *See Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995) and *Rode*, 845 F.2d at 1201 n.6).

Here, Plaintiff alleges, without any factual support, that Defendant Wahl stated, "Salter, myself, Mr. Skutack, C.O. Halipen, C.O. Giordano, w[ere] wrong for using Invidious Discrimination, Conspiracy, Retaliation, against you for not hiring you as a Inmate Porter, however, I must support them, and stand by my actions and their actions as well;" *see supra*, at 5,

- 21 -

and that Defendant Skutack admitted that he violated Plaintiff's constitutional rights through discrimination, conspiracy, retaliation, and his subordinates. (Doc. 1, ¶¶61, 63). However, Plaintiff presents no evidence to substantiate his conclusory allegations. As in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007), such bare assertions amount to nothing more than a "formulaic recitation of the elements" of a discrimination and retaliation claim based on supervisor liability. Absent factual support, these conclusory statements are inadequate to establish such a claim. Accordingly, summary judgment will be granted in favor of the Defendants on this claim.

### C. Motion for Sanctions

Plaintiff filed a motion for sanctions, claiming that the Defendants failed to follow this Court's directive "to serve upon the Plaintiff, their motion for summary judgment, briefings in support thereof, [and] statement of the facts." (Doc. 36, at 2). Contrary to Plaintiff's assertion, Defendants have effected such service, as shown by the record evidence. (Doc. 40). Accordingly, this motion is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' unopposed motion for summary judgment (Doc. 21) pursuant to Federal Rule of Civil Procedure 56, and deny Plaintiff's motion for sanctions (Doc. 36). An appropriate Order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 8/11/25

24-0332-01

- 23 -